UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VIVIANNA LOPEZ, and<br>VALERIE GAYTAN | No. 21 CR 371-1<br>21 CR 371-2<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANT VIVIANNA LOPEZ AND DEFENDANT VALERIE GAYTAN'S
<u>MOTIONS TO DISMISS</u>**

The United States of American, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this response to defendant Vivianna Lopez and defendant Valerie Gaytan's motions to dismiss. Docs. 99, 100. The defendants' motions should be denied.[1]

First, the indictment properly alleges a money laundering conspiracy that continued until 2020 and acts by the defendants in furtherance of the conspiracy within the applicable five-year statute of limitations. For example, the indictment alleges that the defendants engaged in multiple financial transactions in the form of cash drug proceeds transfers via U.S. Mail in 2019 and 2020—well within five years

---

[1] In her motion to dismiss on statute of limitations grounds, counsel for defendant Vivianna Lopez states that she is bringing the motion on behalf of not only Vivianna Lopez but also on behalf of a client she does not represent: co-defendant Laura Lopez. Doc. 99 at fn 6. Counsel for Laura Lopez has not adopted the motion or provided any argument in support of the motion. As a result, the government only responds to defendant Gaytan and defendant Vivianna Lopez's motions to dismiss here. To the extent Laura Lopez raises any new arguments in a motion to adopt, the government would seek leave to address those new arguments.

1

of the 2021 indictment. These financial transactions constitute acts taken in furtherance of the conspiracy. Accordingly, the defendants' motions to dismiss on statute of limitations grounds should be denied.

Second, the defendants did not receive immunity and were not otherwise the beneficiaries of some kind of implied non-prosecution agreement. The defendants rely on statements made by non-governmental actors or by governmental actors in relation to other individuals, not the defendants. None of those events establish that the defendants were promised immunity by any governmental actor, much less the U.S. Attorney's Office for the Northern District of Illinois. In fact, the defendants do not contend otherwise. In the absence of any such promise of immunity by the government, the defendants' motions should be denied.

## I.  Background.

The grand jury returned the indictment on June 9, 2021. Doc. 1. The indictment alleges that, between December 2008 and March 11, 2020, the defendants conspired with each other and others to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count One); that they committed money laundering by concealment, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two, Three, and Five through Nine); and that they engaged in a monetary transaction exceeding $10,000, the funds of which were derived from drug dealing, in violation of 18 U.S.C. § 1957 (Count Four).

With respect to Count One, the indictment alleges that the defendants and their co-conspirators maintained drug proceeds at multiple locations to be used for the defendants' own benefit and the benefit of their family members and associates. Doc. 1 at ¶ 1. The indictment further alleges that co-defendants Laura Lopez and Armando Flores stored a portion of the drug proceeds at their residences for the benefit of the defendants Vivianna Lopez and Valerie Gaytan, respectively. *Id*. at ¶ 3.

Count One details financial transactions by defendants Vivianna Lopez and Valerie Gaytan and their co-conspirators that were designed to conceal the nature, location, source, ownership and control of the drug proceeds, including transactions in which they (a) transferred drug proceeds by U.S. Mail; (b) used drug proceeds to purchase money orders and gift cards, which were later transferred and negotiated; (c) purchased air travel and accommodations using drug proceeds; (d) exchanged lower denomination cash drug proceeds for newer, higher denomination currency through a currency exchange; and (e) purchased, and caused to be purchased, goods and services using credit cards that were paid down with drug proceeds. *Id*. at ¶ 6. In conducting such transactions, the defendants disbursed drug proceeds to themselves and others. The indictment specifically alleges that, on or about September 25, 2019, October 15, 2019, and January 27, 2020, in furtherance of the conspiracy, packages containing drug proceeds were mailed by co-conspirators to defendant Vivianna Lopez by U.S. Priority Express Mail; and on or about September 16, 2019, December

9, 2019, and January 13, 2020, packages containing drug proceeds were mailed by co-conspirators to defendant Valerie Gaytan by U.S. Priority Express Mail. *Id*. at ¶7.

## II. Legal Standard.

Federal Rule of Criminal Procedure 12 permits a defendant to raise by pretrial motion any "defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).

While reviewing a motion to dismiss, the trial court is to construe the facts alleged in the indictment as true and "in the light most favorable to the government." *United States v. Vasquez*, 576 F. Supp. 2d 928, 934 (N.D. Ill. 2008) (citing *United States v. Yashar*, 166 F.3d 873, 800 (7th Cir. 1999)).

## III. The Indictment Charges Offenses Within The Statute Of Limitations Period.

A determination on the applicable statute of limitations, and whether the charges were timely brought, is based upon the face of the indictment. *See United States v. O'Brien*, 953 F.3d 449 (7th Cir. 2020); *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case.").

The statute of limitations for money laundering and money laundering conspiracy is five years. 18 U.S.C. § 3282(a). The statute of limitations generally "begin[s] to run when the crime is complete." *Toussie v. United States*, 397 U.S. 112, 115 (1970). For a continuing offense like conspiracy, however, "the statute of limitations would not run from the time of the first overt acts." *United States v.*

4

*Yashar*, 166 F.3d 873, 875-76 (7th Cir. 1999). Instead, in the context of a conspiracy that does not require proof of an overt act in furtherance of the conspiracy, like a money-laundering conspiracy in violation of 18 U.S.C. § 1956(h), the statute of limitations does not begin to run until the conspiracy accomplished its goals or the defendant withdraws. *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011). Acts in furtherance of the conspiracy during the limitations period can be useful in "showing that a conspiracy begun more than five years before the return of an indictment continued into a period within the statute of limitations," or in "showing that a particular defendant knowingly joined (or remained a member of) a conspiracy." *Id.* However, the government need not allege or prove any overt acts by a particular defendant within the limitations period, so long as the conspiracy existed into the limitations period and the defendant in question did not withdraw before that period. *Grunewald v. United States*, 353 U.S. 391, 396–97 (1957).

Count One of the indictment plainly alleges that defendant Vivianna Lopez, defendant Gaytan, and others engaged in a money laundering conspiracy beginning no later than December of 2008 and continuing until at least March 11, 2020. Doc. 1. The indictment was returned by the grand jury in June 2021—less than 16 months from the alleged end date of the conspiracy. In addition, Count One alleges specific overt acts by each defendant in 2019 and 2020, including the defendants' receipt of drug proceeds up to and including in 2020, which qualify as acts done in the furtherance of the conspiracy. *See United States v. McNair*, 605 F.3d 1152, 1214 (11th

5

Cir. 2010) (holding that "where enrichment is an object of a conspiracy, the conspiracy continues until the conspirators receive the full economic benefits anticipated by their scheme," and stating that "a conspirator's acceptance of payment on the illegally obtained contract constituted an overt act in furtherance of the conspiracy. And brought the conspiracy within the statute of limitations.").

The concealment and spending money laundering counts (Counts Two through Nine) similarly charge the defendants with events that occurred in 2019 and 2020. Doc. 1. The grand jury returned the indictment on June 9, 2021, well before the five-year period expired on any of the charges outlined in the indictment.

The defendants' motions appear to seek a ruling on the sufficiency of their proffered trial evidence, not the indictment itself. For example, defendant Vivianna Lopez contends that she "revealed" the conspiracy during proffered interviews in 2011 and thus the statute of limitations began to run at that point. Doc. 99 at 12-14. She is wrong both legally and factually. "[F]or offenses that are not continuing offenses under *Toussie*, the offense is committed and the limitations period begins to run once all elements of the offense are established." *Yashar*, 166 F.3d at 879–80. Thus, for the substantive money laundering and offenses charged in Counts Two through Nine, the statute of limitations began to run when the money laundering elements were complete upon completion of the charged financial transactions in 2019 and 2020. Revealing of information to the government almost a decade earlier has no effect on this analysis.

For the conspiracy count, which is a continuing offense, the statute of limitations does not begin to run until the conspiracy is terminated, either by abandonment or success. *See United States v. Maloney*, 71 F.3d 645, 659 (7th Cir. 1995). The termination of the conspiracy is dictated by the scope of the conspiracy— which, here, is alleged to have continued well past the time of defendant Vivianna Lopez's proffer interview with the government. Ultimately, it will be for the jury to determine whether the government has proven beyond a reasonable doubt that the conspiracy continued until 2020 and a conspirator committed an overt act within the limitations period. *Cf. United States v. Toma*, 1994 WL 722043, at *3 (N.D. Ill. Dec. 29, 1994) ("Defendants do not dispute that the indictment alleges a single conspiracy. Instead, defendants contend that evidence . . . shows that the conspiracy the government claims is a single conspiracy is actually a multiple conspiracy. On a motion to dismiss the indictment, the question is the adequacy of the allegations, not whether the evidence available will show multiple conspiracies.").

In short, the indictment properly alleges that the defendant's crimes occurred within the statute of limitations period. The court's analysis should end there. But even if this Court were to consider the government's anticipated trial evidence, that evidence will prove beyond a reasonable doubt that defendants engaged in a money laundering conspiracy within the statute of limitations. The evidence will show that, between 2009 and approximately 2010 or 2011, the defendants assisted in the collection and secreting of drug proceeds (unbeknownst to the government) and,

7

between 2015 and 2020, the defendants received proceeds via transactions that were designed to conceal the source and nature of the funds. For example, co-defendant Armando Flores is anticipated to testify that, in approximately 2010 or 2011, he received approximately $2.3 million dollars in drug proceeds on behalf of Gaytan, which he stored for several years and then began distributing to her in approximately 2015 and continuing until 2020, including by sending it via U.S. Mail. Co-defendant Laura Lopez also maintained and disbursed cash drug proceeds for Vivianna Lopez's benefit, through 2020, as reflected by money ledgers maintained by Laura Lopez, as well as by U.S. Mail records and seizures of cash drug proceeds from postal packages mailed from Laura Lopez to Vivianna Lopez.

The defendants concealed and received drug proceeds that were the object of their conspiracy up through 2020 – well within the statute of limitations period. Their motions should be dismissed.

## IV. The Government Did Not Immunize The Defendants, Including For Their Ongoing, Undisclosed Criminal Conduct.

Defendants Vivianna Lopez and Valerie Gaytan move to dismiss the indictment because, they claim, it was reasonable for them to believe that they had immunity for their past and ongoing criminal conduct. "Immunity agreements, like plea bargains, are interpreted as ordinary contracts in light of the parties' reasonable expectations at the time of contracting." *United States v. Andreas*, 216 F.3d 645, 663 (7th Cir. 2000); *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir.1997) ("It is the language of the contract that binds the parties.").

8

There is no immunity agreement here. Neither defendant has been immunized by the government. They did not receive statutory or letter immunity, from the U.S. Attorney's Office in the Northern District of Illinois or any other U.S. Attorney's Office, so there is no contractual language to interpret.

In fact, neither defendant even *contends* that she was told by the government, orally or in writing, that she *actually* had immunity from prosecution for their past or future criminal conduct. And neither defendant has submitted an affidavit averring that she received a promise of immunity from the government or understood, based on something the government did or said, that she would not be prosecuted. In the absence of such an agreement—or even an allegation of such an agreement— defendants have not alleged the most fundamental contract principle: the existence of a meeting of the minds with respect to the existence of a non-prosecution or immunity agreement.

The defendants instead argue that the government can be held to "any clear and unambiguous promise of immunity it makes to a defendant upon which a defendant reasonably relied to his or her detriment." Doc. 100 at 5 (citing *United States v. Rosario*, 237 F. Supp. 2d 242, 244-245 (E.D.N.Y. 2002)); Doc. 99 at 15 (quoting same). But far from establishing a "clear and unambiguous promise of immunity"—which they cannot because none occurred—the defendants instead argue that it was reasonable for them to simply *infer* immunity based upon (1) Pedro Flores's unresponsive answers to questions posed by the government and defense

9

during the Joaquin Guzman Loera trial regarding whether Pedro's wife (Vivianna Lopez) had ever been *charged* with collecting drug debts ("No, she was given immunity"), (2) the government's sentencing memorandum for Pedro and Margarito Flores, in which it discussed having provided immunity to certain *other* individuals engaged in illegal conduct in 2010 and 2011,[2] and (3) a letter from an AUSA involved in the Guzman Loera trial expressing his opinion that Pedro Flores should receive a further reduction in his sentence following his trial testimony.

None of these events conferred immunity upon the defendants. They point to no conversations with any government official during these cited events in which immunity for the defendants was specifically discussed. They cite no case law to support their propositions that testimony by one of the Flores twins that his wife received immunity somehow translates to conferring such immunity; or the government's discussion of immunizing certain other witnesses somehow means that the defendants were immunized. Allowing the defendants to benefit from immunity under these circumstances would give them the benefit of a bargain they never had. *See United States v. Bryant*, 750 F.3d 642, 650 (7th Cir. 2014) (refusing to interpret defendant's cooperation agreement to bar the government's use of his statements to Illinois, because it "would grant him the benefit of a bargain he never had"); *Cf. United States v. Eliason,* 3 F.3d 1149, 1153 (7th Cir. 1993) ("If Eliason wanted to limit

---

[2] Neither defendant claims she was a recipient of the immunity the government conferred during this earlier investigation.

the use the federal government could make of the information he provided to Florida prosecutors, he and his counsel were obliged to follow the accepted procedures and at least make an attempt to obtain such an agreement or promise from the federal government.").

Indeed, much of the defendant's charged criminal conduct occurred *after* these events, meaning that the defendants' argument is that they received immunity for any past *or future* criminal conduct, carte blanche. This is wholly unsupported by the law.

Finally, defendant Gaytan argues that she is a third-party beneficiary of agreements struck with the Flores brothers. Doc. 100 at 5.[3] As this Court is well aware, contract law allows for enforcement of a contract only by a party privy to the contract, not by third-party beneficiaries, unless the contracting parties confer such a right of enforcement to the third-party beneficiary in the contract itself. *See, e.g., Word v. City of Chicago*, 946 F.3d 391, 397 (7th Cir. 2020) (*citing Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017 (2009), and noting that Illinois law strongly disfavors finding that a third-party beneficiary relationship exists absent express language creating one, and quoting *Martis* in providing that "'There is a strong presumption that the parties to a contract intend that the contract's provisions apply

---

[3] During the March 7, 2022, hearing in this matter, counsel for defendant Vivianna Lopez stated that she was not claiming her client and the government had entered into an agreement with one another regarding immunity. Thus, to the extent defendant Vivianna Lopez is making a similar third-party beneficiary argument, such argument fails for the same reasons as stated here.

11

only to them, and not to third parties.'"). But defendant Gaytan does not even identify the agreement to which she believes she is a third-party beneficiary, let alone identify a provision of such a contract allowing her to enforce it. The Flores brothers did not receive immunity from prosecution, so Gaytan could not be a beneficiary of any such immunity. While Gaytan summarily claims that Margarito "intended for his wife to be immune from prosecution," and makes the wholly unsupported claim that "[t]he Government recognized and shared that intent," *id*. at 7, no such intent is reflected in the plain language of the Flores' brothers' cooperation agreements. The cooperation agreements are contracts between the government and the Flores brothers. They contain agreements by the Flores brothers as to cooperation, and reflect the government's representations as to the sentences the government would seek in the event truthful cooperation was provided.[4] The contracts do not contain any reference to a third-party beneficiary with respect to immunity, much less to Gaytan herself in the same regard. This is a far cry from establishing that Gaytan was a bona fide third-party beneficiary of a particular immunity agreement between the government and another party. She was not because none exists.

---

[4] The Flores brothers' plea agreements can be found on the docket in *United States v. Pedro Flores and Margarito Flores*, 09 CR 383 (N.D. Ill.) at Doc. 349 and 350.

## V. Conclusion.

For all the reasons discussed above, the government requests that defendants' motions to dismiss be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Erika L. Csicsila*
ANDREW C. ERSKINE
ERIKA L. CSICSILA
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-1875

Dated: March 21, 2022

13