IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

No. 21 CR 371

v.

Judge Matthew F. Kennelly

VIVIANNA LOPEZ, et al.

### DEFENDANT VIVIANNA LOPEZ'S
### REPLY IN SUPPORT OF HER MOTION TO DISMISS

The government's response brief is largely unresponsive. First, the government fails to address Ms. Lopez's argument that she has enforceable contractual rights as an intended third-party beneficiary to a nonprosecution agreement between her husband Pedro Flores and the government. Second, the government fails to address the effect of her 2011 proffer on the statute of limitations clock. In further support of dismissal, Defendant VIVIANNA LOPEZ, by her attorney MIANGEL C. CODY, tenders the following Reply Brief.

### DISCUSSION

#### A. Nonprosecution Agreement

The real question is whether Ms. Lopez has enforceable rights as an intended third-party beneficiary to an agreement between her husband and the government. On this point, the government's brief falls largely silent. Circuit courts have acknowledged that it may be

1

appropriate to apply contract law principles to agreements between the government and criminal defendants. *See United States v. Smith,* 976 F.2d 861, 863 (4th Cir.1992) (finding that agreements between the government and criminal defendants have characteristics of commercial contracts but also reflect concerns that are "constitutionally based" and "differ fundamentally from and run wider than those of commercial contract law."); *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986) (applying contract law principles to the interpretation of a plea agreement, but noting that constitutional concerns "require holding the Government to a greater degree of responsibility than the defendant."). Generally, contract law allows a third-party to benefit from a contract to which it is not a party where there is an unambiguous demonstration that the parties to the contract intended the third-party to directly benefit from the agreement. *See Brantley v. Republic Mortg. Ins. Co.,* 424 F.3d 392, 396 (4th Cir.2005).

In binding precedent, the Seventh Circuit has acknowledged that the third-party beneficiary concept applies in the criminal context. *See United States v. Andreas,* 216 F.3d 645, 663 (7th Cir. 2000) ("Individuals who are not parties to a contract may enforce its terms only when the original parties intended the contract to directly benefit them as third parties."). In *Andreas*, the Seventh Circuit stated: "Immunity agreements, like plea bargains, are interpreted as ordinary contracts in light of the parties' reasonable expectations at the time of contracting." *Id.* (citing *Wilson v. Washington,* 138 F.3d 647, 652 (7th Cir.1998); *United States v. Fields,* 766 F.2d 1161, 1168 (7th Cir. 1985). **Individuals who are not parties to a contract may enforce its terms only when the original parties intended the contract to directly benefit them as third parties.***" See* Restatement (Second) of Contracts § 304

2

(1979); *Holbrook v. Pitt,* 643 F.2d 1261, 1270 (7th Cir.1981) ("Under settled principles of federal common law, a third party may have enforceable rights under a contract if the contract was made for his direct benefit."); *see also Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 178 N.E. 498, 501 (1931).[5] A contract creates a right in a third-party beneficiary if recognition of that right effectuates the intent of the parties and the "circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 304; *Holbrook,* 643 F.2d at 1271 n. 17 (adopting the Second Restatement definition); *see generally Cahill v. Eastern Benefit Sys., Inc.,* 236 Ill.App.3d 517, 177 Ill.Dec. 718, 603 N.E.2d 788, 792–93 (1992) ("The critical inquiry centers on the intention of the parties, which is to be gleaned from the language of the contract and the circumstances surrounding the parties at the time of its execution .");

This case is analogous to *United States v. CFW Const. Co., Inc.*, 583 F.Supp. 197, 202 (D.S.C.1984). In *CFW*, the district court held that a third-party beneficiary could enforce the terms of a plea agreement. The court reasoned:

> The fact that CFW never entered into a plea agreement, however, is not dispositive of the issues presented herein. CFW was clearly a third party beneficiary of the Tennessee Paving plea agreement, and CFW also alleges that it was a third party beneficiary of the plea agreement entered into by William Carter.
>
> Under traditional contract principles, an intended third party beneficiary of a contract may enforce its provisions as against the promisor. 17 Am.Jur.2d *Contracts* § 319 (1964); Restatement (Second) of Contracts § 307 (1981). Thus, if the Government, in negotiating the aforementioned plea agreements, "promised" that there would be no prosecution against CFW for antitrust violations arising in *any* jurisdiction, the promise must be enforced.

The holding in *CFW* applies here: "When the Government has entered into [an agreement with a criminal defendant], it is well established that federal courts must enforce

3

the agreement and not allow the Government to retract its promises. Where a defendant has relied on the Government's representations and has upheld his obligations under such an agreement, the Government will also be required to honor its promises." *Id.* at 202.

Ms. Lopez contends she is an intended third-party beneficiary to a non-prosecution agreement between her husband Pedro Flores and the government.[1] Indisputably, there was an agreement between the government and Pedro Flores. Among other promises made, there is a tacit and enforceable agreement that Ms. Lopez would not be prosecuted so long as her husband upheld his end of the bargain. Here, Mr. Flores (the promisee) intended to give a benefit to his wife. He cooperated, repeatedly. He recorded numerous conversations that the government described as unprecedented. At great (and continuing) peril to himself and his family, he publicly testified at a cartel trial.[2] Mr. Flores upheld his end of the bargain; so too should the government.

Ms. Lopez detrimentally relied on the government's nonprosecution promise – for which she was an intended third-party beneficiary. Her right to enforce the nonprosecution

---

[1] The government argues: "Indeed, much of the defendant's charged criminal conduct occurred after these events, meaning that the defendants' argument is that they received immunity for any past or future criminal conduct, carte blanche. This is wholly unsupported by the law." ECF No. 117 at 11. This circular argument misses the point. Ms. Lopez's argument is that she did not engage in any future criminal conduct. At most, she spent drug proceeds of which the government was well aware for over a decade and she did so *after* the nonprosecution agreement was executed between her husband and the government. Ms. Lopez's 2019 and 2020 retail purchases were not "future criminal conduct" because they were not designed to conceal the nature of the funds – the government already knew about the money. She and her co-defendants told the government about the $5 million in 2011.

[2] A list of cases in which Mr. Flores cooperated is attached as Exhibit A, which was attached as a public exhibit to the government's sentencing memorandum in Mr. Flores's case.

4

agreement in this case arises from her detrimental reliance. Contrary to the government's bare assertion, Ms. Lopez did not commit any new money laundering conduct after the agreement was struck. Rather, Ms. Lopez's "mere spending of ill-gotten funds would not sweep" into the providence of new criminal laundering conduct. *United States v. Arthur*, 582 F.3d 713, 718 (7th Cir. 2009). She spent drug proceeds that, for over a decade, the government knew existed. Furthermore, Ms. Lopez bought the purse, exercise bike and other items the government now construes as "criminal" *after* the government explicitly stated in Mr. Flores's 2015 sentencing memo that it had granted immunity to family members involved in the pickup and transportation of the money.

### B. Statute of Limitations

A good place to start is where the parties appear to agree:

1. The government concedes the Flores brothers' drug trafficking organization is the predicate unlawful activity for its money laundering case. That predicate unlawful activity had terminated by late 2011.

2. The government concedes "between 2009 and approximately 2010 or 2011, the defendants assisted in the collection and secreting of drug proceeds." ECF No. 117 at 7. That timing is critical to the Court's analysis.

3. The government acknowledges, in October 2011, Ms. Flores attended a counseled proffer meeting with government agents and disclosed the existence of secreted funds in a Plainfield home.

4. The government does not dispute, by late 2011, it was plainly aware that over $5 million dollars was stored in the Plainfield house. Nor does it dispute that only $4 million dollars of that total was surrendered through Chicago attorney T.D. These facts are memorialized in a DEA Report dated March 24, 2011.

To salvage its belated indictment, the government argues: "for the substantive money laundering and offenses charged in Counts Two through Nine, the statute of limitations

5

began to run when the money laundering elements were complete upon completion of the charged financial transactions in 2019 and 2020." ECF No. 117 at 6. The government's alleged acts fall within two categories of conduct – neither of which meets the statutory definition of laundering so as to extend the statute of limitations.

*First*, the government alleges Ms. Lopez committed money laundering transactions when she spent drug proceeds on retail purchases such as an exercise bike and purse. That argument fails under binding Seventh Circuit precedent. The Seventh Circuit has instructed that the "mere spending of ill-gotten funds would not sweep the [predicate criminal offense conduct] within the money laundering statute, and that subsequent transactions must be designed to hide the provenance of the funds." *Arthur*, 582 F.3d at 719. Ms. Lopez cited the *Arthur* case in her opening brief, ECF No. 104 at 11-12.

The Seventh Circuit's analytical distinction in *Arthur* is important here. In this case, the government's response does not explain to this Court *how* the conduct in Counts 2 through 9 is not "mere spending of ill-gotten funds" and, instead, how that conduct was "designed to hide the provenance of the funds."[3] Ms. Lopez's retail shopping habits and paying for her children's school was not cloaked with the intent to conceal the source of the funds. Perhaps she spent ill-gotten gains, which does *not* qualify as a laundering "financial transaction" to extend the statute of limitations period. The government's response does not discuss or distinguish the case of *United States v. Steele*, which held that the concealment element of a

---

[3] Ms. Lopez acknowledges that, given her husband's high-profile cooperation with the government, she has been and will continue to conceal her location and whereabouts to ensure her safety and that of her young children.

6

laundering conspiracy ends when the conspiracy is revealed to the government. 685 F.2d 793, 801 (3d Cir. 1982).

*Second*, the government argues "defendants engaged in multiple financial transaction in the form of cash proceeds transfers via U.S. Mail in 2019 and 2020." ECF No. 117 at 1. The government does not cite any caselaw to support its argument that the mere act of sending cash via U.S. mail qualifies as a *financial transaction* within the statutory definition of money laundering.

## CONCLUSION

WHEREFORE, for these reasons, Ms. Vivianna Lopez respectfully moves to dismiss the Indictment.

Respectfully submitted,

/s/ MIANGEL CODY
TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605
Tel: 312-858-8330

*Counsel for Vivianna Lopez*

## CERTIFICATE OF SERVICE

The undersigned, MiAngel Cody, an attorney hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**DEFENDANT VIVIANNA LOPEZ'S**
**REPLY IN SUPPORT OF HER MOTION TO DISMISS**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on March 29, 2022, to counsel/parties that are non-ECF filers.

/s/ MiAngel Cody
MIANGEL CODY
*Counsel for Vivianna Lopez*