UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 21 CR 371-1 |
|---|---|
| v. | |
| VIVIANNA LOPEZ | Judge Matthew F. Kennelly |

**GOVERNMENT'S RESPONSE TO DEFENDANT LOPEZ'S
SUPPEMENT TO MOTION TO COMPEL AND FOR SANCTIONS**

As the Court found during the August 31, 2022, hearing on defendant's motion, the memorandum at issue is protected by the deliberative process privilege. Prior to the hearing, the government voluntarily disclosed to the defense facts contained in the memorandum – the large majority of which had already been disclosed in discovery – and the Court, after reviewing the memorandum *in camera*, concurred with the government's disclosure save for one sentence, which the government promptly and subsequently disclosed. The Court then asked defendant to explain, in a supplemental filing and consistent with case law in this Circuit, why a particularized need for the deliberative information exists.

Instead of focusing on the narrow issue put by the Court to the defendant, defendant restates much of the same rhetoric and arguments found in her prior filings – arguments the government has previously addressed and will not re-address

1

here.[1] Instead, the government will focus on the question presented by the Court: whether defendant has established that there is a particularized need for the deliberative information contained in the memorandum. Defendant has not, and therefore defendant's motion should be denied.

I. **LEGAL STANDARD**

The deliberative process privilege shields "communications that are part of the decision-making process of a government agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege exists to ensure that frank discussions of legal and policy matters can be had, which is essential to the decision-making process of a government agency. *Id*. The deliberative process privilege applies if the documents are both "pre-decisional" – generated before the adoption of a policy or decision – and "deliberative" in that they reflect the give and take of the consultative process. *Bahena v. City of Chicago*, 2018 WL 2905747, *2 (N.D. Ill. 2018).

A two-step process exists for determining whether the deliberative process privilege applies. *Id*. First, the government must show that the privilege applies to the documents at issue. *Id*. If the government makes a prima facie case that the privilege applies, then the burden shifts to the party seeking disclosure to establish "a particularized need" for the documents and that the party's need for the document outweighs the government's interest in confidentiality. *Id*. Courts consider the

---

[1] The Court is well-aware of the government's arguments relating to defendant's position from its prior written submissions, including the Government's Response to Defendant Lopez's Second Motion to Compel and Motion For Sanctions. Doc. 179.

following factors when conducting that balancing test: (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about government policies and decisions. *Ferrell v. United States Dept. of Housing and Urban Development*, 177 F.R.D. 425, 429 (N.D. Ill. Jan. 20, 1998).

II. **ARGUMENT**

    A. **The Memorandum Is Covered by the Deliberative Process Privilege.**

This Court found at the August 31, 2022, hearing, after an *in camera* review, that the memorandum is covered by the deliberative process privilege. Defendant nonetheless claims that no privilege exists for a variety of reasons, none of which have merit.

First, defendant contends that the memorandum, dated February 1, 2011, is post-decisional and therefore discoverable. In support of her motion, defendant points to a portion of the testimony of former AUSA Michael Ferrara, who was asked about the timing of the government's decision not to prosecute family members for the hidden Washington, D.C. money (proceeds that are not the subject of the instant charges, it bears noting). While defendant claims that Ferrara pinpointed the

3

decision not to prosecute relating to the Washington D.C. pick up as being made in September 2010, AUSA Ferrara's testimony reflects otherwise:

> AUSA: So you just testified the decision was made not to prosecute. Were you – do you recall approximately when that decision was made?
>
> FERRARA: A decision on whether to prosecute additional family members or those involved and the collection of surrender of [the Washington D.C.] proceeds?
>
> AUSA: Correct.
>
> FERRARA: I don't have any specific recollection. Near the time of those [September and November 2010] recordings we were just listening to. I mean, once all of the facts were known, at a certain point the front office and specifically the U.S. attorney made decisions on how to proceed, and those decisions did not involve any further prosecutions.

July 26, 2022 AM Tr. at 61:18-23. Contrary to defendant's claim, Ferrara did not pinpoint the decision at September 2010—instead, he made clear that he didn't have "any specific recollection" (not surprising given his involvement in the case for nearly a decade), but that it was made "once all the facts were known"—that is, after the proffers were complete. Gaytan did not proffer until March 2011 and the individual who received letter immunity did not proffer until September 2011.

Moreover, from the portion of the memorandum disclosed by the government – none of which defendant references – it is clear that the investigation was ongoing as of February 2011, and thus no decision had been made. Specifically, the memorandum stated:

> This memorandum follows up on our Front Office meeting in which we discussed the request by lawyers for the Flores brothers' family

4

> members (namely, brother Armando, and wives Valerie and Viviana) for immunity prior to allowing them to proffer regarding the assets of the Flores brothers. . . . At the Front Office meeting, Pat [Fitzgerald] clearly rejected their request, stating that the office was not going to give them immunity prior to their personally proffering.

Thus, the memorandum, on its face, is far from post-decisional.

Second, defendant claims that the government waived the privilege by asking Mr. Ferrara questions about *whether* a decision had been made, *when* any decision was made, and *who* made the decision. *See* Doc. 188 at 10-11. But those questions did not "open the door" to any and all communications regarding the deliberative process—i.e., *why* the decision was made.

Finally, defendant claims that the deliberative process privilege is eviscerated in this case because the memorandum might contain *Brady*. But, as this Court knows from its *in camera* review, and as the government has previously represented, the memorandum does not contain *Brady* material. The memorandum pertains exclusively to the Washington D.C. proceeds, which are not the subject of this prosecution. Further, as previously disclosed in the government's response to the first motion to compel, the memorandum does not state that that Lopez had or would receive immunity, or that the government had entered, or would enter, into a nonprosecution agreement for her benefit. And while the government disagrees with the merit of defendant's statute of limitations argument, the information in the memo that is pertinent to their theory (i.e., when government representatives became aware

5

that family members possessed drug proceeds) has been disclosed. Defendant's motion should therefore be denied.

      **B.    Defendant Cannot Demonstrate a Particularized Need for the Remaining Deliberative Portion of the 2011 Memorandum.**

Defendant also claims that, should the Court determine the memorandum to be deliberative in nature (it already has), then defendant claims she can demonstrate a particularized need for access to the materials. But defendant cannot satisfy her burden in this regard. Balancing the relevant factors, disclosure is not warranted nor appropriate.

First, the memorandum has marginal, if any, relevance to the litigation, as it relates to the making of decisions unconnected to the charged conduct. As this Court knows both from the evidentiary hearing and from the face of the memorandum, the memorandum relates to the hiding of the Washington D.C. money pick up from the government. *That is not the subject of the charges in this case.* Whether the government did or did not exercise its prosecutorial discretion in an earlier matter does not bear on the defendants' exposure and claims in the instant charges. For the same reason, the second prong, whether other evidence would serve the same purpose, also weighs in favor of the government, as there is no purpose to be served

6

by turning over a deliberative memorandum relating to conduct not part of the charges in the instant case.[2]

The third factor – the government's role in the litigation, and the seriousness of the litigation – also weigh in the government's favor. As an initial matter, it is difficult to see how the government's *internal* deliberations could shed light on defendant's claim that she was the third-party beneficiary of an implicit non-prosecution agreement – something that necessarily requires communications from the government to non-governmental actors. But more to the point, the instant litigation stands in stark contrast to several of the cases discussing the deliberative process privilege – cases in which the government itself is a party to civil litigation where a central issue is *how* or *why* the government's decision was made. For example, defendant quotes at length from *Bahena v. City of Chicago*, 2018 WL 2905747 (N.D. Ill. 2018). The *Bahena* case involved a suit against Chicago and several of its police officers for malicious prosecution, false arrest, and the wrongful prosecution of a double murder. *Id*. at *1. At the heart of that litigation was the question of what went into the decision to prosecute; in other words, understanding how the decision to prosecute was made was a critical and necessary part of the litigation. In contrast, here, *why* or *how* any decision was made on the topic of prosecution or non-prosecution, or immunity, is irrelevant to defendant's claims –

---

[2] To the extent any of the facts reflected in the memorandum are relevant to the instant litigation, they have been disclosed during the course of the litigation, in some instances multiple times – including by the government's voluntary disclosure.

7

what matters is whether such a decision was made, and whether and how it was communicated to the defendants. The government's internal pre-decisional memorandum will not shed any light on defendant's claims in that regard.

Finally, to allow disclosure of the deliberative process memorandum to the defendant would have a chilling effect on future, frank discussions within the U.S. Attorney's Office. While defendant suggests the passage of time somehow lessens that effect, it does not – particularly when the type of information defendant seeks is irrelevant to the litigation and is of the type involved in many criminal cases – past, present and future. While the government acknowledges the seriousness of the criminal charges against defendant, on balance the defendant has fallen far short of demonstrating a particularized need for access to the government's deliberative processes.

### C. Evidentiary Concerns do not Merit Further Production

Finally, defendant argues that production of the memorandum is required for evidentiary reasons and because the summary letter is non-verbatim and thus insufficient. As an initial matter, as the Court is aware from its review *in camera*, the government's disclosure letter is a near-verbatim summary of those portions of the memorandum. Further, defense counsel is as equipped now to use the information at trial as she would be if the memorandum itself were produced. As far as the government can tell, no rule of evidence would allow for the memorandum itself to be admitted into evidence. At the same time, counsel can use the information already

8

disclosed to formulate questions, as well as to ask impeaching questions. (The government will not be taking positions contrary to the memo at trial, so practically speaking it's very unlikely that a situation could arise in which the memo or its contents could be useful for impeaching a witness.) Counsel could also use the government's disclosure letter to try to refresh recollections just as she would use the memorandum itself.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to compel and for sanctions should be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Erika L. Csicsila*
ANDREW C. ERSKINE
ERIKA L. CSICSILA
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-1875

Dated: September 16, 2022